UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RAYMOND BLANCHETT,

       Plaintiff,                           Case No. 07-15469
                                             Honorable Sean F. Cox

v.

SANOVO ENGINEERING
USA, INC., an Illinois Corporation,

       Defendant.
_____/

OPINION & ORDER

      This is a diversity action alleging breach of contract and breach of company termination

policy.   The matter is currently before the Court on Defendant's Motion for Summary

Judgement [Doc. No. 17]  The parties have fully briefed the issues, and a hearing was held on

January 15, 2009.  For the reasons below, the Court **DENIES** Defendant's Motion with respect

to Blanchett's Breach of Contract [Count I] claim, and **GRANTS** Defendant's Motion with

respect to Blanchett's Breach of Company Termination Policy [Count II] claim.

I.  BACKGROUND

      This is a diversity action for breach of contract and breach of company termination

policy, filed by Plaintiff Raymond Blanchett ("Blanchett") in the Oakland County, Michigan,

Circuit Court on November 19, 2007.  Defendant Sanovo Engineering USA, Inc. ("Sanovo")

removed this action from state court on December 26, 2008.

1

Sanovo is a producer and distributor of egg breaking and processing machinery throughout North America. (Blanchett Dep., Def.'s Ex. B, p.57-61). Blanchett sold Sanovo equipment as an independent contractor for approximately ten years, from the mid-1990s until June of 2007. *Id*. at 24-25, 28. Blanchett was also President of his own corporation, Integrated Food Technologies, LLC ("IFT"), and Sanovo directly contracted with IFT for Blanchett's services. *Id*.

Both parties agree that their business relationship ended on June 28, 2007, though their stances on how the relationship terminated differ. Sanovo argues Blanchett decided he no longer would sell Sanovo equipment per the terms of their contract for the 2007 year, and resigned. (Def.'s Exs. E, F). Blanchett argues Sanovo breached the terms of their 2007 contract, and that he refused to continue his performance after Sanovo's breach. (Br. of Pl., p. vi).

Blanchett and Fillipsen met in December of 2006 to discuss Blanchett's upcoming contract for the 2007 year. Blanchett's 2006 compensation package paid him $5,000 base monthly pay, plus a $5,000 monthly advance on sales commissions, for a total of $10,000 per month. Blanchett had been far below $60,000 in earned sales commissions for 2006, with Fillipsen estimating that, had Blanchett been paid commissions as they were earned rather than advanced, Blanchett's total 2006 compensation would have been about $65,000 instead of $120,000. (Def.'s Ex. B, pp.84-95). After the December meeting, at which no agreement for 2007 was entered into, an email discussion between the two parties ensued (*See* Def.'s Ex. G).

Sometime in December of 2006,[1] Fillipsen emailed Blanchett and offered Blanchett a package which returned to a previous compensation structure of $5,000 base monthly pay, plus

---

[1] The original email from Fillipsen to Blanchett after their meeting was undated.

2

payment of commissions as they were earned  (1% for first $4M in sales, 2.5% all sales above $4M).  (Def.'s Ex. G, pp.898-900).  Blanchett responded to Fillipsen's email on December 29, 2006, saying "I appreciate your offer for 2007, but I cannot accept it on face value."  Blanchett proposed continuing the $10,000 monthly payment as in the 2006 Contract.  *Id*. at 898.  Later that same day, December 29, 2006, Fillipsen responded with what he termed his "final proposal":

1.  We will pay you monthly 5.000 fixed.
2.  We will pay you a draw against commissions of 5.000 per month
3.  At June 30 [2007], if commissions earned based on receipt of order meets or exceeds the draws, we will continue to pay 5.000 fixed and 5.000 draw.
4.  ***At June 30, if commissions earned based on receipt of order are less than the draws through June 30th, the draw will be discontinued until receipt of order has caught up with the already paid draws.***
    \*\*\*\*\*\*\*\*\*\*

***Please confirm your acceptance of the above, so we can concentrate on the business ahead.***

*Id*. at 897-98 (emphasis added).

Despite the terms of Fillipsen's December 29, 2006 offer requiring notification of Blanchett's acceptance, Sanovo has not proffered any evidence of acceptance by Blanchett. Instead, Sanovo argues the proposed contract was unilateral, and that Blanchett's performance suffices for evidence of his intent to be bound by these terms.  (Br. of Def., p.3).

Blanchett tells a different story.  Upon receipt of Fillipsen's December 29, 2006 "final proposal" email, Blanchett claims he called Fillipsen's office.  On that phone call, Blanchett and Fillipsen agreed to continue Blanchett's compensation for 2007 on the same terms as had been in 2006, as evidenced below:

A. ...we did discuss it [Fillipsen's December 29, 2006 "final proposal"], and we

> kicked around some ideas, and then we finished up with a phone call.
> ***And then they agreed to pay me ten thousand dollars a month, just like***
> ***they had [in 2006].***
> Q.  You rejected his [December 29, 2006 "final proposal"] offer; is that right?
> A.  I rejected his offer.

(Blanchett Dep., Pl.'s Ex. 1, pp.82-83) (emphasis added).

Blanchett was paid $10,000 per month from January until June of 2007.  Both sides argue that the payments were consistent with the contractual terms as they separately understood them: Sanovo argues the $10,000 reflected their agreement to continue paying $5,000 base plus $5,000 commission advance they agreed to pay only until June, while Blanchett argues the $10,000 reflected the base plus commission structure without the attached reservation of Sanovo's right to revoke in June 2007.

By the end of June 2007, Blanchett had earned sales commissions of only $13,951 compared to the $30,000 Sanovo had advanced, and Sanovo informed Blanchett they would be discontinuing the $5,000 monthly commission advance until his earned commissions caught back up with his advanced commissions.  (Fillipsen Aff't, Def.'s Ex. C, ¶ 15).  Upon receipt of this information, Blanchett stated he would stop working if Sanovo refused to honor their previous agreement.  (Blanchett Dep., Ex. B, p.97).  Sanovo considered this response by Blanchett to be a resignation, and accepted it as such.  (Fillipsen Aff't, Ex. C, ¶ 16).

Blanchett's Complaint [Doc. No. 1] also brings a claim for six months severance pay.  He brings this claim based entirely upon prior conversations with Sanovo employees and executives:

> Q.  On what basis are you entitled to severance?
> A.  Well, I was – ***I was always told that as part of the Sanovo family, that if they***
> ***– if you leave, or – or they terminate you, they automatically give you a***
> ***severance***, and I was told that through some people that worked at
> Sanovo.  So I just felt that if that is the case then I should be part – I

4

> should – I should get it.  Now, obviously, if they can prove that they've
> never given severance, then – then they're – so be it.
>
> Q. ***Who told you about that?***
> A. ***Well, Terry Ames, which was the old CEO, had mentioned it, and a couple
> other people who had left through the years.***

(Blanchett Dep., Ex. B, p.130) (emphasis added).  Blanchett has not come forward with

deposition testimony, or a signed affidavit, by either Terry Ames or any other individual

referenced in his deposition testimony above, which would corroborate these statements.

Further, Blanchett admitted that Sanovo never gave him a copy of a severance policy or a

promise to pay severance upon his termination:

> Q. You've never seen anything in writing on any severance package?
> A. No.
> Q. You never got any agreement or email?
> A. Never had an agreement, no.

*Id*. at 133.

Blanchett filed suit in the Oakland County, Michigan, Circuit Court on November 19,

2007.  Sanovo removed this action from state court on December 26, 2008.  Plaintiff's

Complaint alleges two causes of action: Breach of Contract [Count I], and Breach of Company

Termination Policy [Count II].


## II.  STANDARD OF REVIEW


Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to a judgement as a

matter of law."  Fed.R.Civ.P. 56(c).  The party seeking summary judgment has the initial burden

5

of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits which it believes demonstrate the absence of a genuine issue of material fact. *Celotex v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting Fed.R.Civ.P. 56(e)).

## III. ANALYSIS

As explained below, Blanchett has demonstrated that genuine issues of material fact remain regarding his breach of contract claim. As such, the Court **DENIES** Summary Judgement on Count I. Because Blanchett cannot demonstrate a genuine issue of material fact regarding his breach of company termination policy claim, the Court **GRANTS** Summary Judgement for the Defendant on Count II.

### A. Blanchett's Count I Claim for Breach of Contract

Under Michigan's common law, five elements must exist to establish an enforceable contract: 1) the parties are competent to contract; 2) the contract involves proper subject matter; 3) legal consideration is exchanged; 4) mutuality of agreement is established between the parties; and 5) mutuality of obligation is established. *Thomas v. Leja*, 187 Mich.App. 418, 422 (1991); *Mallory v. City of Detroit*, 181 Mich.App. 121, 127 (1998). Defendant Sanovo argues that, as a matter of law, Blanchett's version of the 2007 Contract fails to meet the requirements of 3) consideration and 4) mutuality of agreement. [Br. of Def., pp.11-17]. Defendant Sanovo is

6

incorrect on both of these arguments as a matter of law.

### 1.  Mutual Consideration Exists For Blanchett's Purported Oral Agreement

Mutual consideration is required for a legal contact to exist under Michigan law.  *Thomas* at 418; *Yerkovich v. AAA*, 461 Mich. 732, 740 (2000) (citing *Detroit Trust Co. V. Struggles*, 289 Mich. 595, 599 (1939)).  For mutual consideration to exist, a bargained-for exchange must have occurred.  *Higgins v. Monroe Evening News*, 404 Mich. 1, 20-21 (1978).

Sanovo argues that "at no time under the alleged oral agreement [for 2007] was Plaintiff required to modify his own performance [beyond what was required of him in 2006]." [Br. of Def., pp.13-14].  Defendant Sanovo thus argues Blanchett is bound by the preexisting duty rule, which holds that "doing what one is legally bound to do is not consideration for a new promise." *Id*. at 12, citing *Puett v. Walker*, 332 Mich. 117, 122 (1952)].

While Sanovo is correct that Blanchett proposed no new duties for himself above and beyond what would have been expected of him in 2006 for the 2007 Contract, his continued willingness to be bound by such terms suffices for consideration in this case.  Blanchett agreed to sell Sanovo products for the 2006 calendar year under the terms of that agreement; while he had an obligation to abide by the terms of the 2006 agreement during the 2006 calendar year, his obligations were terminated at the close of that year.

### 2.  Mutuality of Assent Exists for Blanchett's Purported Oral Agreement

Mutuality of assent, otherwise characterized as a "meeting of the minds," is required for a

7

legal contract under Michigan law.  *Thomas* at 418; *Quality Products & Concepts Co. v. Nagel Precision, Inc.*, 469 Mich. 362, 364 (2003).  In determining whether oral statements create an enforceable oral contract, courts must analyze the meaning a reasonable person attaches to an oral comment.  *Barber v. SMH, Inc.*, 202 Mich.App. 366, 370 (1993).

    In this case, Sanovo argues Fillipsen's denial that the oral agreement ever took place evidences a lack of mutuality of assent. [Br. of Def., p.15].  With the exception of this lone argument, neither side disputes the fact that a valid contract was entered into between the parties: *they simply disagree on what the terms of that contact stated*.  There is a genuine issue of material fact over whether the terms of the oral agreement or the terms of the December 29, 2006 email contain the agreement of the parties, not whether the parties had an agreement in the first place.

    Fillipsen and Blanchett disagree on whether Fillipsen entered into the oral agreement on behalf of Sanovo.  This Court, in keeping with F.R.C.P. 56, must construe all such disputed facts in the light most favorable to Blanchett, the non-moving party, for purposes of Summary Judgement.

### 3.  Fact Questions Remain Regarding Blanchett's Breach of Contract Claim

    Sanovo argues that Blanchett breached the 2007 Contract, and as such Blanchett's claim for breach of contract should be dismissed as a matter of law.

    Neither side disputes that, in June of 2007, Sanovo suspended Blanchett's $5,000 monthly draw on commission until his earned commissions caught up with his advanced commissions.  It is also undisputed that, because Sanovo suspended Blanchett's commissions in

8

June of 2007, Blanchett subsequently ceased working for Sanovo.  What is disputed, however, is whether it was Blanchett or Sanovo who breached their agreement, and this question hinges on whose interpretation of the 2007 Contract governs the relationship between the parties.

The unresolved question of whose version of the 2007 Contract governs the relationship between Blanchett and Sanovo precludes this Court from granting summary judgement.  Because of this, Sanovo's Motion for Summary Judgement on Blanchett's Breach of Contract claim [Count I] is **DENIED**.

### B.  Blanchett's Count II Claim for Breach of Company Termination Policy

Blanchett cannot prove his claim for Breach of Company Termination Policy.  As stated above, Blanchett can point to no evidence that such a policy exists.

There is no cause of action under Michigan law for "Breach of Company Termination Policy."  Rather, Blanchett's claim in Count II should properly be characterized as a separate claim for Breach of Contract.  Sanovo denies the existence of a contract which would support Blanchett's claim for severance pay.  As Sanovo has thus satisfied their burden of production under *Celotex*, the burden then shifts to Blanchett to "set forth specific facts showing that there is a genuine issue for trial."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting Fed.R.Civ.P. 56(e)). Blanchett has proffered no such evidence to support his claim for severance pay, therefore the Court **GRANTS** Sanovo's Motion for Summary Judgement on Blanchett's claim for Breach of Company Termination Policy.

### IV.  CONCLUSION

9

For the reasons explained above, the Court **DENIES** Defendant's Motion for Summary

Judgement [Doc. No. 17] with respect to Count I, and **GRANTS** Defendant's Motion for

Summary Judgement with respect to Count II.

**IT IS SO ORDERED**.

S/Sean F. Cox
Sean F. Cox
United States District Judge

Dated:  January 29, 2009

I hereby certify that a copy of the foregoing document was served upon counsel of record on
January 29, 2009, by electronic and/or ordinary mail.

S/Jennifer Hernandez
Case Manager